**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BERNARD FORD<br>Petitioner | : | CIVIL ACTION |
| v. | : | No. 21-3741 |
| BERNADETTE MASON, et al.<br>Respondents. | : | |

---

**REPLY IN SUPPORT OF CONSOLIDATED AMENDED PETITION FOR A WRIT OF HABEAS CORPUS AND MEMORANDUM OF LAW**

---

CLAUDIA FLORES
Supervising Attorney
KATHERINE THOMPSON
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut St., Suite 545W
Philadelphia, PA 19106
(215) 928-1100

Counsel for Petitioner Bernard Ford

Dated: September 22, 2026

# TABLE OF CONTENTS


INTRODUCTION ..........1

ARGUMENT ..........2

I. Because Ford's Guilty Plea Was Not Knowing, Voluntary, and Intelligent, His Conviction and Sentence Violate the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. ..........2

A. The state-court opinion involves an unreasonable determination of the facts on the record. ..........3

B. Ford is entitled to relief on de novo review. ..........10

II. Ford's Sixth Amendment Right to Counsel Was Violated By His Attorneys' Failure to Effectively Investigate His Mental Health, Advise Him as to His Guilty Plea, and Advocate on His Behalf. ..........17

A. The state-court denial of Ford's IAC claim does not preclude relief. ..........18

B. Ford is entitled to relief on de novo review. ..........27

CONCLUSION ..........29

Petitioner Bernard Ford, through undersigned counsel, hereby files this Reply in support of his Consolidated Amended Petition for a Writ of Habeas Corpus and Memorandum of Law ("Amended Petition"). This Reply addresses certain arguments raised by the Commonwealth in its Response. In all other respects, Ford rests on the arguments made in his Amended Petition.

## INTRODUCTION

The gist of the Commonwealth's Response is that Ford is not entitled to federal habeas relief on any claim because the trial judge concluded that his plea was knowing and voluntary, even though: (i) that ruling was premised on a woefully deficient record; (ii) Ford never received effective counsel at any stage of state-court proceedings; and (iii) the state courts unreasonably denied Ford's diligent efforts to develop the evidentiary record in support of his constitutional claims. In other words, the Commonwealth's position is that, despite the deficiency of the state court process in this case, the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") constrains this Court to act as no more than a rubber stamp for the state court's prior decisions denying relief. But "[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).[1] Furthermore, AEDPA deference is premised on the principle that, "when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first

[1] *See also Williams (Terry) v. Taylor*, 529 U.S. 362, 389 (2001) ("[AEDPA] directs federal courts to attend to every state-court judgment with utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law. If, after carefully weighing all the reasons for accepting a state court's judgement, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail."); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (28 U.S.C. § 2254(e)(1)'s "presumption of correctness" is "demanding but not insatiable").

opportunity to review this claim and provide any necessary relief." *Williams (Michael) v. Taylor*, 529 U.S. 420, 437 (2000). Because the state courts here effectively waived that opportunity by denying Ford the ability to substantiate his claims, AEDPA cannot preclude relief.

Alternatively, the Commonwealth seeks to downplay the evidence that could have been presented had Ford been provided competent counsel and the process he was due in state court. But the Commonwealth does not substantively challenge any of Ford's new evidence, which includes a previously unpresented diagnosis of intellectual disability as well as the opinions of two highly qualified mental health experts, each of whom extensively evaluated Ford and each of whom concluded that his plea was not knowing, intelligent, and voluntary. Nor does the Commonwealth argue that the new evidence fails to support Ford's claims for relief. Given the Commonwealth's failure to meaningfully discuss—let alone rebut—any of Ford's new evidence, this Court should find at a minimum that he is entitled to a hearing, if not a grant of relief on the pleadings.

## ARGUMENT

### I. Because Ford's Guilty Plea Was Not Knowing, Voluntary, and Intelligent, His Conviction and Sentence Violate the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

As set forth in the Amended Petition, Ford was pressured by counsel to enter into an open plea agreement that Ford did not understand, just days before trial was to commence, and the trial court failed to ensure that the plea was knowing, voluntary, and intelligent. The Amended Petition also established that the state-court opinion denying relief on this claim was an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2), and that Ford is entitled to relief under de novo review. In response, the Commonwealth only addresses Ford's arguments regarding the

reasonableness of the state-court opinion. Because the Commonwealth fails to adequately defend the state-court opinion and has forfeited any procedural or substantive response to Ford's arguments on de novo review, this Court should grant relief.

### A. The state-court opinion involves an unreasonable determination of the facts on the record.

The operative state-court opinion resolving Ford's due-process claim is the Superior Court's January 19, 2018 opinion denying relief after an "independent review of the record." *Commonwealth v. Ford*, No. 3692 EDA 2016, 2018 WL 480290, *2 (Pa. Super. Ct. Jan. 19, 2018). Thus, in reviewing the claim under § 2254(d), this Court "must determine what arguments or theories supported" the ruling in that decision and "ask whether it is possible fairminded jurists could disagree that *those arguments or theories* are inconsistent with the holding in a prior decision of this Court." *Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (emphasis added); *see also Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (affirming that the role of a federal habeas court under § 2254(d) is to "simply review[] the specific reasons given by the state court" and to "defer[] to those reasons if they are reasonable").

As explained in the Amended Petition, the Superior Court's direct-appeal opinion cites the following evidence as supporting the denial of relief on Ford's due-process claim: the November 3, 2015, plea hearing; trial counsel David Desiderio's November 16, 2015, testimony at the hearing on Ford's motion to withdraw his plea; and Ford's "actions after execution of plea agreement." *Id.* The Commonwealth attempts to defend the court's reliance on this evidence as a reasonable determination of the facts under § 2254(d)(2), but it fails to rebut the arguments raised in the Amended Petition establishing otherwise. The Commonwealth also relies on evidence not cited in the operative state-court opinion (or, in some instances, in any opinion) and erroneously asserts

that the state court considered evidence clearly ignored by both the trial court and the Superior Court. Accordingly, the Commonwealth fails to demonstrate that the state-court opinion warrants AEDPA deference.

**1. November 3, 2015, plea colloquy**

The Commonwealth first contends that the court's November 3, 2015, colloquy was "appropriate under the circumstances." Response at 42. But none of the factors cited in support of this assertion withstands scrutiny.

To begin, the Commonwealth points to the fact that "Ford was represented by counsel," *id.*, ignoring that trial counsel subsequently admitted that: he had no knowledge of Ford's limitations when advising him as to the plea arrangement; he relied upon Ford to ask for clarification of terms that he did not understand; and Ford in fact "may not have understood nuances and terminology and what happens next and where do we go from here," NT 11/16/15 at 161–66. And the Commonwealth fails to account for the fact that the entire open-plea arrangement was hastily concluded in a matter of days and that the written waiver form prepared by counsel contained factual inaccuracies specifically relating to Ford's mental health. Am. Pet. ¶¶ 47, 134. Furthermore, while the Commonwealth stresses that Ford conferred with counsel mid-colloquy when asked whether he understood the "effect his plea would have on his potential custody of his children," Response at 43, the fact that counsel had not already discussed this topic with his client merely *supports* that Ford had not been adequately advised regarding the consequences of his plea.

Next, the Commonwealth asserts that the trial court "extensive[ly]" explored Ford's mental health during the oral colloquy. But this "extensive" discussion spans just three transcript pages and consists of the trial court asking Ford to describe the "nature" of his "mental health problems,"

which he proved incapable of doing. *See* NT 11/03/15 at 5–8. Instead, Ford told the court that his mother would "know better," *id.* at 6, but no one asked Ford's mother to take the stand or even sought a recess so that counsel—who later admitted to being utterly ignorant as to Ford's longstanding mental health challenges, *see* NT 11/16/15 at 161—could confer with her.

The Commonwealth also posits that the court asked Ford "a number of open-ended questions to determine his understanding." Response at 43. But the *two questions* quoted by the Commonwealth— "Why are you here today?" and "[T]o what charge?"—are the *only* "open-ended" questions posed regarding Ford's understanding of the plea. After that, the court's questions consisted *entirely* of leading, yes/no questions. *Id.* at 8–16. Hence, while the Commonwealth also points to the state court's finding that "Ford answered the court's questions in a 'lucid and coherent manner,'" *id.* at 41, that finding is negligible in light of the actual substance of the relevant answers. Indeed, it is difficult to imagine how one could deliver a simple "yes" or "no" that is not "lucid and coherent."

Next, the Commonwealth points to the written waiver form itself, again ignoring that the form contained readily apparent factual inaccuracies that belied any notion that counsel had thoroughly reviewed the form with Ford prior to having him sign it. A511. And the Commonwealth also ignores that the court's colloquy contained no discussion regarding Ford's obligations under the separate Memorandum of Agreement ("MOA") concluded with the District Attorney's office.

**2. November 16, 2015, hearing testimony**

In addition to defending the reasonableness of the state court's reliance on the evidence from the November 3 colloquy, the Commonwealth contends that the state-court ruling was reasonable because "three different attorneys" testified at the November 16, 2015, hearing that

"Ford appeared lucid, engaged, and seemed to understand what was going on during the entirety of the plea bargaining and colloquy process." *Id.* at 45 (citing testimony of Desiderio, ADA Brian Zarallo, and ADA Allison Ruth). But the Superior Court opinion only refers to the testimony from trial counsel, which cannot be deemed credible for the reasons discussed immediately above and in the Amended Petition. *See* Am. Pet. ¶¶ 132–34. And although the trial court references the testimony of ADA Zarallo in its discussion of Ford's claim, that testimony shed no relevant light on Ford's understanding of his open-plea arrangement, given that Zarallo conceded that he was in Ford's presence for a total of less than twenty minutes, was not privy to Ford's discussions with counsel, and never asked Ford about his educational level or "psychiatric issues." NT 11/16/15 at 104. Ruth's testimony is only mentioned in the trial court's recitation of the procedural history and had even less relevance to Ford's claim for relief than Zarallo's testimony. Ruth's involvement was limited to observing the November 3 plea colloquy, and she conceded she never had *any* conversation with Ford, let alone a discussion regarding his counsel's consultations regarding the plea arrangement or Ford's understanding thereof. *Id.* at 125.

The Commonwealth also points to the few instances in Ford's own hearing testimony where he arguably concedes he understood certain aspects of his plea arrangement. Response at 46. But a thorough reading of the transcript reflects that Ford denied understanding the purpose of his proffer or the terms of the MOA at least as often as he claimed to have understood. *See, e.g.*, NT 11/16/15 at 69, 74, 81–83. Indeed, in its direct-appeal opinion, the trial court itself summarized Ford's hearing testimony as follows:

> Defendant stated that he signed the Memorandum of Agreement with the Commonwealth without ever reading the document or having it explained to him by Mr. Desiderio. He testified that when he signed the agreement, he did not

> understand that he was cooperating with the Commonwealth and did not know that he would be called as a witness. . . . He stated that at his guilty plea hearing, he did not understand his colloquy and did not understand any of the judge's questions.

6/05/17 Op. at 4. Because the state courts did not rely on any supposed admission by Ford that he had understood the terms of his plea arrangement in denying relief, the Commonwealth cannot rely on that testimony in defending the reasonableness of the state-court opinion under § 2254(d)(2).

Perhaps most critically, all of the testimony presented at the November 16, 2015, hearing carries limited weight given that the lawyer appointed to represent Ford at that hearing had never previously met Ford and was denied the opportunity to investigate the circumstances of Ford's plea arrangement specifically or his mental health generally. *See* Am. Pet. ¶ 53. The Commonwealth has no defense against this fatal flaw underlying much of the state-court's ruling.

**3. Post-plea "actions"**

Finally, the Commonwealth claims that the state court reasonably looked to Ford's actions after he entered the plea to demonstrate he understood the terms and consequences thereof. Although the Superior Court does not specify which "actions after execution of plea agreement" it found to support its ruling, the trial court cited the fact that Ford went to a meeting with the ADAs three days after entering his plea to "prepare for trial" and, while there, called Desiderio to express misgivings about the arrangement. Dkt. No. 86-2 at 19–20. But, as observed in the Amended Petition, the relevant question is whether Ford "knew and understood" the terms of the MOA at the time he entered his guilty plea, not three days later. If anything, Ford's call to Desiderio three days after entering the plea shows that it was only at that meeting that Ford learned he was expected to testify against his co-defendants.

Rather than attempting to defend the only specific post-plea "action" mentioned in any court opinion, the Commonwealth points to ADA Zarallo's testimony that trial counsel requested pre-plea that Ford be transferred out of county jail because he had "concerns." Response at 46 (citing NT 11/15/16 at 101). But there is no reference to that testimony in either the Superior Court or trial court opinion. And in any event, Ford's "concerns" could have been prompted by the fact that he was meeting with prosecutors at all, regardless of whether Ford understood that he would have to testify in the trial of his co-defendants.

Meanwhile, to the extent Ford's post-November 3, 2015, behavior has any relevance, the Commonwealth fails to mention the evidence of Ford's actions demonstrating that he did *not* understand the plea arrangement. While some of this evidence can only be considered on de novo review, *see infra* at Section II.B.2, some of it is in the trial record. For instance, as already mentioned, Ford called counsel regarding misgivings with the arrangement when meeting with the prosecutor on November 6, 2015. The trial record also reflects that Ford again called counsel prior to beginning his trial testimony on November 12, 2015, to say he did not want to testify; that he attempted to tell the trial court the same but was ignored; and that he twice attempted to withdraw his plea once he was informed this was an option. *See* Am. Pet. ¶¶ 49–51, 135.

#### 4. Additional evidence not considered by the state court

As set forth in the Amended Petition, even if the trial court's initial, mid-trial ruling denying Ford's motion to withdraw his plea was reasonable, the state court's decision on direct appeal affirming that ruling was not. The Superior Court decision unreasonably ignored evidence that had been entered into the record at the time of Ford's sentencing, namely: the Presentence Investigation Report, the Mental Health Evaluation prepared ahead of sentencing, and a letter from

Ford's sister indicating that her brother's disabilities caused him to enter into a plea agreement that he did not understand. *See* Am. Pet. ¶ 131. The Commonwealth argues that the state courts did in fact consider this evidence on direct appeal, but cannot cite to any portion of either the Superior Court's or the trial court's opinion to substantiate that assertion. Instead, the Commonwealth cites to the portion of the transcript from the November 16, 2016, sentencing hearing in which the trial court acknowledges that it had received the relevant records. *See* Response at 46 (citing NT 11/14/16 at 5–6). But at no point at that hearing, and at no point in ruling on Ford's direct-appeal claim, does any court consider how those records might or might not alter the trial court's earlier decision that Ford had validly entered his plea. Sentencing counsel Jason Kadish did not argue to the court that the records should be considered as supporting the renewed motion to withdraw Ford's plea, asking only that the court "adopt" its earlier ruling denying the motion. NT 11/14/16 at 6–7. In response, the trial court "put in the record" that she had "extensively reviewed any mental health issues with the defendant on the record *at the time I took the guilty plea on November 3, 2015*," and, based on that review, she "adopt[ed] [her] previous decision" denying Ford's motion to withdraw. *Id.* at 7 (emphasis added). The trial court then quoted this same language in the procedural history portion of its direct-appeal opinion, *see* 6/05/17 at 8, which the Superior Court subsequently adopted, *see also Ford*, 2018 WL 480290, at *1 (Superior Court observing on direct appeal that "the trial court fully and correctly sets forth the relevant facts and procedural history of this case"). By contrast, neither the Superior Court opinion nor the trial court's opinion makes *any mention* of the evidence newly entered into the record at the time of Ford's sentencing, let alone how that evidence reflected on the validity of his plea.

#### 5. Conclusion

Because the state-court opinion rested on clearly erroneous factual findings and an unreasonable determination of the facts, including by ignoring highly relevant evidence available in the trial-court record, Ford has satisfied § 2254(d)(2). *See, e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003) (when the post-conviction court makes "clear factual error," "partial[ly] reli[es] on an erroneous factual finding," and/or makes an "incorrect" "assumption" about the contents of the state-court record, then "[t]he requirements of § 2254(d) . . . pose no bar to granting petitioner habeas relief"); *Brumfield v. Cain*, 576 U.S. 305, 314–16 (2015) (state-court opinion was unreasonable determination of the facts because it failed to account for evidence that "was entirely consistent with" the petitioner's claim); *Pierce v. Administrator*, 808 F. App'x 108, 112 (3d Cir. 2020) (state-court opinion unreasonable under § 2254(d)(2) because it "made no mention of" facts directly supporting petitioner's claim).

### B. Ford is entitled to relief on de novo review.

#### 1. 28 U.S.C. § 2254(e)(2) does not preclude consideration of Ford's new evidence.

The Commonwealth offers no procedural defense to the extensive new evidence submitted by Ford in support of his due-process claim, other than to make the (uncontested) point that the new evidence cannot be considered for purposes of the § 2254(d) review. *See* Response at 39, 48. Accordingly, this Court should deem any objection under § 2254(e)(2) forfeited as to this claim. However, because the Commonwealth does raise a (tepid) § 2254(e)(2) defense to the same evidence in relation to Ford's ineffective-assistance-of-counsel ("IAC") claim, Ford will address that argument here.

As extensively detailed in his Amended Petition and as the Commonwealth previously conceded, § 2254(e)(2) does not preclude Ford from developing new evidence in these federal habeas proceedings because Ford diligently attempted to develop the relevant evidence in state post-conviction proceedings and is not at fault for the underdeveloped state-court record. *See* Am. Pet. ¶¶ 108–12; *see also* Dkt. No. 29 (Commonwealth's prior brief on § 2254(e)(2)). The Commonwealth now describes its initial position on this issue as "preliminary"[2] and argues that Ford's entitlement to federal evidentiary development is in fact "murky." Response at 54. In support, the Commonwealth cites *Morris v. Beard*, 633 F.3d 185, 196 (3d Cir. 2011), for the proposition that "merely because a petitioner has complied with state law when seeking an evidentiary hearing does not mean that he has been diligent for purposes of § 2254(e)(2)." But the Commonwealth fails to quote the remainder of the relevant passage in *Morris*, which goes on to state that "merely" requesting a hearing *does* satisfy the (e)(2) diligence requirement where the state court fails to provide a valid reason for denying that request. *See id.* Here, Ford diligently requested a hearing to develop evidence relevant to his claim that counsel performed ineffectively by failing to investigate Ford's ability to validly enter a guilty plea, which would have led to the development of evidence showing that plea was not valid. A51–59. However, the PCRA court denied that request based on post-conviction counsel's *Finley*[3] letter affirming that "that the issues raised in [Ford's] pro se" petition were "without merit." A108–09. That determination, in turn, was clearly defective, as PCRA counsel openly admitted that he performed zero extra-record

[2] The Commonwealth's August 5, 2022, memorandum provided no indication that its position on § 2254(e)(2) was "preliminary."

[3] *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988).

investigation into Ford's IAC claim and relied entirely upon the trial record. A60–73. Thus, the trial court had no valid reason for denying Ford's request for an evidentiary hearing and *Morris* actually *supports* his argument under § 2254(e)(2).

In any event, Ford did far more than "merely" request an evidentiary hearing. Rather, as detailed in the Amended Petition, Ford made consistent efforts to present evidence in support of his claims, including: explaining in his initial pro se PCRA petition that, although no records were available to him at the time of filing, he intended to submit exhibits after having consulted with appointed counsel; requesting copies of his Presentence Investigation Report and "any court [-]ordered psychological report," indicating that these records would support his claim; requesting an evidentiary hearing in his initial petition and naming trial counsel Desiderio and sentencing counsel Kadish as potential witnesses; and objecting to the PCRA court's notice of intent to dismiss without a hearing, stating that the summary denial of his petition would deprive him of the opportunity to develop the record and reiterating his request for an evidentiary hearing. *See* Am. Pet. ¶ 109.

The Commonwealth does not dispute any of the foregoing facts or Ford's assertion that they are relevant to a finding of diligence. Instead, the Commonwealth complains that Ford never "attempted to present any of the evidence that only he could obtain, such as SSI records, school records, and declarations from family members." Response at 55. But it fails to explain how an indigent, intellectually disabled inmate whose court-appointed attorney withdrew without performing any investigation should have accomplished this extensive document collection. As the Supreme Court has observed, pro se prisoners are "in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the trial record."

*Martinez v. Ryan*, 566 U.S. 1, 12 (2012). And the Commonwealth itself previously acknowledged that, "due to Ford's documented mental illnesses, . . . Ford's ability to 'investigate facts' and 'present forcefully and coherently his contentions' without counsel may be compromised." Dkt. No. 12 ¶ 5 (quoting *Reeves v. Fulcomer*, 946 A.2d 247, 267 (3d Cir. 1991)). Unlike its position on § 2254(e)(2) generally, the Commonwealth has not since attempted to distance itself from this statement, nor could it.

In short, given Ford's extensive efforts to develop the state-court record, and the PCRA court's unreasonable refusal to allow him to do so, § 2254(e)(2) poses no barrier to factual development in these proceedings.

**2. The Commonwealth forfeited any substantive response to Ford's new evidence, and any passing challenge to the new evidence is meritless.**

The Commonwealth's only substantive response to the new evidence as it relates to Ford's due-process claim appears in a footnote that reads, in its entirety: "In any event, the new evidence is largely cumulative of evidence already in the state court record. The new evidence reinforces what the trial court already knew: Ford had a long history of significant mental health disability and disorder." Response at 48 n.12. This Court need not address this contention, as "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered [forfeited]." *Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) (alteration in original); *see also United States v. James*, 955 F.3d 336, 345 (3d Cir. 2020) ("[T]o be preserved, . . . arguments must be supported specifically by 'the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'") (quoting Fed. R. App. P. 28(a)(8)).

However, even if this Court considers the Commonwealth's assertion that Ford's new evidence is merely cumulative, that contention is easily rebutted. As discussed at length in the

Amended Petition and above, the state-court opinion denying relief on direct appeal relies solely on:

- limited, self-reported statements from Ford to the trial court during a constitutionally defective plea colloquy;
- a factually inaccurate written plea colloquy;
- testimony from the November 16, 2015, plea hearing that lacks credibility and/or relevance, in part because Ford was represented at the hearing by newly appointed counsel who was given no time to investigate; and
- irrelevant and selective post-plea "actions" undertaken by Ford.

By contrast, as the Commonwealth itself acknowledges, Ford's Amended Petition "presents numerous new sources confirming he had a well-documented history of mental challenges compounded by environmental factors," including "the results of several psychological evaluations (A87–94, A202–212, A257–65, A266–80, A281–99, A323–38, A530–51, A552–58), school records (A189–201, A213–38, A239–56, A301–06, 312–22), records of psychological treatments and medications (A74–78), disability administration records (A332–74), jail and prison medical records (A375–483, A515–19), and recent declarations from family members and a former teacher (A84–86, A95–104)." Response at 31. While all of this evidence is fully detailed in the Amended Petition, it bears summarizing again here to demonstrate the contrast with the trial-court record and put the lie to the Commonwealth's allegation that the evidence is cumulative.

Briefly, the new social history records show, inter alia:

- Ford exhibited social withdrawal, difficulty communicating, and repeated episodes of "shutting down" beginning in early childhood and continuing into his twenties.
- He was described as a "follower" who was "easily tricked," and lacked self-esteem.
- Throughout his schooling, teachers expressed concern that Ford would not respond to questions and could not be "gotten through to."

- Testing has consistently shown Ford has an intelligence in the "very low range" and that he fell far below age-equivalency in academic achievement.
- He was physically and verbally abused by his father and reportedly attempted suicide as young as age twelve; concerns that he was a suicide risk persisted in his teens.
- He has consistently experienced depression, panic attacks, and auditory hallucinations, and was hospitalized on at least one occasion after hearing voices.
- Ford was not only diagnosed with schizophrenia, but his illness was categorized as "severe," such that even minimal increases in mental demands would cause decompensation.
- While incarcerated pretrial—i.e., during the period in which trial counsel represented Ford and convinced him to enter into the plea arrangement with the Commonwealth—prison records reflected Ford:
    - was flagged for serious mental illness;
    - prescribed antipsychotic and antidepressant medications;
    - repeatedly complained of racing thoughts, mood swings, and hearing voices;
    - was hospitalized at least once for suicidal ideation; and
    - was described as "childlike" with "borderline intelligence" and "very concrete thought process."

The new evidence also reflects that Ford explained to neuropsychologist Dr. Martell that his meetings with trial counsel had been limited to two occasions: one at the preliminary hearing, when counsel told Ford his trial would be a "a walk in the park," and the second on the day Ford believed he was going to start picking a jury but was taken instead to the District Attorney's office. A546. According to Dr. Martell, Ford understood that he faced two options: (i) enter the plea deal as his lawyer advised, which meant he would "go upstate, do some time, go home [and s]ee my family;" or (ii) not take the plea, which he understood meant he would "[g]et life [and] never [his] my kids." A547. He did not understand that he would have to testify against his co-defendants, or

that even after pleading guilty, he was subject to a sentence of up to eighty years in prison. A545–47. Ford signed the documents counsel told him to sign and followed counsel's instructions to "just say yes to the questions" posed by the court at the plea colloquy. A545.

Also newly developed is a sworn declaration from Ford's sister explaining that Ford believed that his plea would operate similar to his prior pleas, i.e., "he would plead guilty and come home soon. Bernard would call me for months after he pled asking when he was coming home." A102; *see also* A545 (Dr. Martell noting that, as to his understanding the "open plea," Ford "related that he had experience from drug cases before in which he took a plea and then would go home"). And Ford's misunderstanding on this point is also reflected in contemporaneous prison records. *See* A515–16.

In terms of expert opinion, the report from neuropsychologist Dr. Martell confirms Ford's diagnosis of intellectual disability, explaining his intelligence in the bottom 1st percentile nationally and his academic functioning at the elementary school level. A540, A544, A548. Dr. Martell specifically identified severe language deficits and moderate-to-severe impairments in frontal lobe and executive abilities including divided attention, multitasking, impulse control, and behavioral self-monitoring. A549–50. He concluded that Ford's intellectual disability, academic deficits, and neurocognitive impairments limited his capacity to read and fully understand the plea agreement and what would be expected of him. A550. Dr. Martell further opined that Ford was particularly susceptible to signing the MOA and entering a guilty plea under pressure from trial counsel, citing research literature on the vulnerability of persons with intellectual disability, mental illness, childhood trauma, and related conditions to suggestion and pressure from authority figures. *Id.*

In the second expert report, forensic psychiatrist Dr. Rushing—who evaluated Ford and administered the MacArthur Competence Assessment Tool–Criminal Adjudication—explains that Ford demonstrated clinically significant impairment on the Appreciation task, which measures the ability to apply legal information to one's own situation. A557. She found that Ford could grasp the general concept of a plea deal but failed to appreciate how its terms would affect his future; could not formulate questions to determine the impact of the plea on his life; and did not understand that penalties on two charges could run consecutively, meaning he did not appreciate the possibility of a de facto life sentence. *Id.* Dr. Rushing also observed that during the plea colloquy, Ford said "yes" without detailing understanding and struggled to articulate details about his own mental health when asked. *Id.* And, like Dr. Martell, she concluded that Ford's intellectual impairments made him particularly vulnerable to coercion or pressure by defense counsel and that his ability to appreciate the significance and consequences of his plea and cooperation was limited. *Id.*

The Commonwealth's brief fails to meaningfully address, let alone rebut, any of this new evidence, including the expert opinions of Dr. Martell and Dr. Rushing. Given that all of the evidence is properly before this Court, and that the Commonwealth has not disputed its substance in any way, the Court need not have an evidentiary hearing to credit the evidence and should grant relief on the briefing and written evidence. However, at the very least, Ford has demonstrated that he is entitled to an evidentiary hearing to further substantiate his constitutional claim for relief.

## II. Ford's Sixth Amendment Right to Counsel Was Violated By His Attorneys' Failure to Effectively Investigate His Mental Health, Advise Him as to His Guilty Plea, and Advocate on His Behalf.

In response to Ford's ineffective-assistance-of-counsel claim, the Commonwealth attempts to defend the state-court's denial of relief without a hearing as reasonable under § 2254(d) and

argues that many of the allegations are inexcusably defaulted. The Commonwealth also offers a half-hearted challenge to Ford's new evidence under § 2254(e)(2), but ultimately attempts to avoid the question of Ford's diligence in state court by arguing that the new evidence is cumulative, without ever addressing the substance of that evidence. None of the Commonwealth's arguments is persuasive, and Ford is entitled to relief.

### A. The state-court denial of Ford's IAC claim does not preclude relief.

#### 1. The state-court opinion was unreasonable under § 2254(d).

Abandoning its previous assertion to this Court that the state-court post-conviction opinion rested on a legal conclusion that was "squarely foreclosed by binding Supreme Court precedent at the time it was made and adopted," Dkt. No. 29 at 3 n.1 (citing *Lafler v. Cooper*, 566 U.S. 156, 173 (2012)),[4] the Commonwealth now argues that "[d]espite surface-level similarities between this case and *Lafler*," they are in fact "distinguishable," Response at 51. But the Commonwealth fails to grasp the relevance of *Lafler*, which resolves the § 2254(d)(1) analysis not because it is factually identical to this case, but because it affirms the clearly established federal law applicable to a claim that counsel performed ineffectively in relation to a plea. Specifically, as the Supreme Court has repeatedly held, the applicable standard requires that a reviewing court consider: (i) whether counsel performed deficiently; and (ii) whether there is a reasonable probability that, but for counsel's errors, "the outcome of the plea process would have been different." *Lafler*, 566 U.S. at 163, 174; *see also Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985).

[4] As with its position on § 2254(e)(2), the Commonwealth gave no indication in its August 5, 2022, memorandum that its position that the state post-conviction opinion was unreasonable under § 2254(d)(1) was "preliminary," as it now claims.

Here, Ford alleged that counsel performed deficiently by failing to adequately investigate Ford's mental health and then rushing him into accepting an open plea arrangement without ensuring that he understood the strength of the prosecution's case, the rights he was waiving, or the consequences of the open plea. That claim necessarily depended on the development of extra-record evidence to establish what reasonably diligent trial counsel would have learned had he properly investigated; how that evidence would have affected his advice regarding Ford's plea; and, ultimately, how it would have affected Ford's decision whether to enter the open plea. *See, e.g.*, *Martinez*, 566 U.S. at 11 (recognizing that, when a "state habeas court 'looks to the merits of the clai[m]' of ineffective assistance, no other court has addressed the claim"). Nevertheless, the state court denied post-conviction relief based on the same record relied upon on direct appeal, without providing Ford the opportunity to develop the record and without assessing his claim under the standard articulated in *Lafler*. Specifically, the Superior Court adopted the PCRA court's opinion, *Commonwealth v. Ford*, 251 A.3d 1263, *1 n.2 (Pa. Super. Ct. 2021) (Table), which denied relief without a hearing "based upon [post-conviction] counsel's *Finley* letter," A144. That *Finley* letter, in turn, made clear that PCRA counsel performed no extra-record investigation, meaning counsel's assessment that the IAC claim lacked merit was based on the trial record alone. *See* Am. Pet. ¶¶ 68–69. And, as the Commonwealth itself acknowledges, the PCRA court opinion effectively reproduces its direct-appeal opinion in support of its decision to credit the *Finley* letter. *See* Response at 25 (describing PCRA opinion as "extensively quot[ing] its direct appeal opinion"); *see also id.* at 27–28 (Commonwealth explaining that PCRA court determined Ford's IAC claim "'wholly without merit' because, *as had already been found on direct appeal*, Ford's *plea colloquy on-the-record* established his competency") (quoting PCRA opinion at 4) (emphasis

added); *see also Ford*, 251 A.3d at *1 n.2 (Superior Court explaining, after referring to Ford's direct-appeal claim, "[g]iven our prior conclusion that Appellant's plea was voluntary, despite his mental health issues, his ineffectiveness claim lacks arguable merit").

To the extent that the Commonwealth is arguing that Ford's state post-conviction IAC claim was intended to be premised solely on the trial-court record, the Commonwealth is mistaken.[5] To begin, although the claim did not articulate all of the allegations presented in Ford's counseled habeas petition, the Commonwealth concedes that "pro se filings are construed liberally." Response at 56 n.25. Here, Ford framed his PCRA claim as one premised on trial counsel's ineffectiveness, not trial-court error; requested an evidentiary hearing at which he intended to call trial counsel and sentencing counsel as witnesses; and specified that he planned to supplement the record with new evidence. *See* A51–59*;* A111–13. Each of these factors clearly indicated that Ford's PCRA was not, as claimed by the Commonwealth, limited to "facts that the state court had already considered on direct appeal." Response at 53. Furthermore, the Commonwealth's contention ignores that Pennsylvania's post-conviction rules allow for the liberal amendment of claims, including after an evidentiary hearing. *See, e.g.*, *Commonwealth v. Crispell*, 193 A.3d 919, 929–30 (Pa. 2018) (reversing as an abuse of discretion the PCRA court's denial of a motion to amend based on evidence that was disclosed in post-conviction proceedings

[5] As explained in the Amended Petition, the Commonwealth is also mistaken in arguing that Ford's claim in state court was limited to counsel's ineffectiveness for failing to investigate competency. Although claim was framed that way in Ford's pro se pleadings, the state courts understood the claim to include the allegation that, "had counsel conducted such an investigation, he would have discovered that Appellant was not entering his plea knowingly, intelligently, and/or voluntarily." *Commonwealth v. Ford*, 251 A.3d 1263, *1 (Pa. Super. Ct. 2021); *see also* A148 (PCRA court opinion concluding: "[T]he record is clear that Defendant voluntarily and knowingly entered into his guilty plea. Thus, counsel cannot be found ineffective and no relief is due.").

after the initial post-conviction petition was filed and remanding for consideration of the motion in accordance with the liberal standards of PCRA). Thus, had the PCRA court granted Ford's request for an evidentiary hearing, he could have developed the evidence that supports the claim pled in the federal habeas petition and amended his PCRA to reflect that evidence.

In light of the foregoing, the Commonwealth also fails to rebut Ford's argument that, in addition to being an unreasonable application of *Lafler* under § 2254(d)(1), the state-court decision is unreasonable because it rests on a "non-existent factual record." Am. Pet. ¶ 191 (quoting *Fooks v. Superintendent, Smithfield SCI*, 96 F.4th 595 (3d Cir. 2024)). Notably, the Commonwealth concedes that there is an "'exception' to *Pinholster*'s general bar"[6] that allows a federal habeas petitioner to "develop new evidence for purposes of § 2254(d)" if the "state court denied him a hearing because it unreasonably believed his allegations could not entitle him to relief even if true." Response at 53. The Commonwealth nevertheless disputes that the exception applies here, contending that because Ford's PCRA "alleged only facts that the state court had already considered on direct appeal," the hearing request was "reasonably denied." *Id*. In reality, Ford raised a claim of trial-counsel ineffectiveness and requested the opportunity to develop new evidence supporting that claim, and the state court denied a hearing based solely on the trial-court record. In other words, the state court determined that there was *no possibility* extra-record evidence could establish that counsel performed deficiently and that Ford was prejudiced as a result. As such, the state court denied relief based on its "unreasonabl[e] belie[f]" that Ford's

[6] Referring to the rule established in *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011), that a federal habeas court is ordinarily limited to the state-court record when reviewing a state-court decision under § 2254(d).

allegations "could not entitle him to relief even if true," and Ford is entitled to the same exception applied in *Fooks*.

**2. Alternatively, this claim is procedurally defaulted but still reviewable by this Court.**

In the event that this Court adopts a limited reading of Ford's PCRA claim, then his federal IAC claim is procedurally defaulted and Ford overcomes the default under either *Martinez v. Ryan*, 566 U.S. 1 (2012), or *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

**a. Ford overcomes any procedural default under *Martinez*.**

In arguing against the application of *Martinez*, the Commonwealth does not even attempt to defend the performance of PCRA counsel, who openly admitted to having done no extra-record investigation in support of Ford's ineffective-assistance claim. Rather, the Commonwealth asserts that none of Ford's claims have "arguable merit." The Commonwealth's analysis is flawed in two fundamental respects.

First, the Commonwealth ignores that the *Martinez* standard is low, requiring only that Ford establish the defaulted claim is "substantial," and specifying that a claim is only insubstantial if "it does not have *any merit* or . . . it is *wholly without factual support*." *Martinez*, 566 U.S. at 14, 16 (emphases added). Moreover, "when a petitioner shows that [post-conviction] counsel's performance was unreasonably deficient, the requirement that the deficient performance result in prejudice may be satisfied with a substantial claim of ineffective assistance of trial counsel that would otherwise have been deemed defaulted." *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 939 (3d Cir. 2019) (footnote and quotation marks omitted)). Notably, the Commonwealth itself conceded that Ford had "raised a substantial claim" relating to the voluntariness of his guilty plea on the basis of his pro se habeas petition alone, Dkt. No. 12 ¶ 5, and the detailed allegations

set forth in Ford's Amended Petition detailing prior counsels' failure to investigate and protect Ford's constitutional rights in relation to his guilty plea more than satisfy the *Martinez* threshold. The same evidence shows that the sub-claim regarding Kadish's defective representation at sentencing is substantial.

As to Ford's allegation that counsel ineffectively rushed Ford into accepting the plea arrangement by telling him it would "probably save his life," NT 11/16/15 at 146, the Commonwealth points to the statements from two eyewitnesses—James Perry and Sylvia Taylor—and posits that "both statements suggested Ford had specific intent to kill." Response at 60. But the Commonwealth offers no response to the many flaws outlined in the Amended Petition showing that both Perry and Taylor had severe credibility problems. *See* Am. Pet. ¶¶ 89–96. Nor does it address the closing arguments of defense counsel in the recently produced transcript from the Johnson/Hutchins trial, which make clear that the accounts of the crime given by Perry and Taylor continued to be inconsistent with one another as to several crucial details, as well as inconsistent with earlier statements given by each witness at various points in time *and* with the forensic evidence. *See, e.g.*, NT 11/30/15 at 13 (describing the eyewitness testimony as "saturated in contradictions and conflicts not only with each other, but most significantly with that neutral evidence that was presented in this case"); *id.* at 17 (reminding jury that, when confronted with contradictions between trial testimony and earlier statements, Perry admitted he had "made a lot of mistakes"); *id.* at 37, 50–51 (highlighting that eyewitness Taylor conceded she only looked at the group of assailants for a "couple seconds" and had not been wearing her glasses); *id.* at 57 (Perry's testimony inconsistent with that of medical examiner). The prosecutor did not take issue with these characterizations in his own closing; he merely said that Perry had "[t]ried to remember"

to "the best of his ability," *id.* at 75, and that Taylor did not have to be "necessarily entirely accurate for [the jury] to accept what she has to say," *id.* at 87.

The Commonwealth also disputes Ford's claim that he was indisputably not the shooter and did not have a gun, citing to Taylor's (eventual) statement that Ford did have a gun, *see* Response at 60 n.26, which she gave after initially denying that Ford was involved at all and despite Perry's repeated statements that Ford had not been armed, *see* Am. Pet. ¶¶ 90–94. But not even the *prosecution* found Taylor's statement credible, as it conceded at Ford's sentencing hearing that Ford neither possessed nor used a weapon during the crime. *See* NT 11/14/16 at 18. The Commonwealth is also mistaken in stating that Ford's co-defendants were acquitted because "they could not be connected to the inculpatory text messages, and . . . none of the other eyewitnesses saw either of them with a gun." Response at 61. In fact, eyewitness Perry consistently identified Terrence Johnson not only as having a gun, but as the individual who "put a gun [McCrary's] forehead and sho[]t him," and also stated that Spencer Hutchins had a gun during the attack. A12. And Johnson was one of the two individuals exchanging the "inculpatory text messages," *see* NT 11/30/15 at 98–101, so he was certainly "connected with" each of those texts, whereas Ford was merely mentioned in one text, which he neither sent nor received.

Also unpersuasive is the Commonwealth's insistence that the acquittals of Johnson and Hutchins were attributed "in large part to Ford's non-cooperation." Response at 61. As already observed in the Amended Petition, Ford ultimately delivered the testimony that the Commonwealth was hoping he would provide. The Commonwealth pushes back on this assertion by pointing out that the prosecutor had to "cross-examine" Ford on his own statement, *id.* at n.28, but that doesn't change the fact that the evidence Ford had provided during his proffer was elicited

at trial and still both defendants were acquitted. And obviously, Ford would not have been providing any testimony against himself at his own trial if he had not taken the plea, so the only question is whether the contradictory and constantly evolving stories told by Perry and Taylor would have been enough to convict Ford had he received effective assistance of counsel. The acquittal of his co-defendants proves they would not.

Aside from misrepresenting the strength of the prosecution's case, the Commonwealth seeks to defend counsel's performance by suggesting that Ford himself—an intellectually disabled prisoner who was entitled to effective assistance of counsel—should have discovered the weaknesses in the prosecution's case because he had been given access to his discovery. Response at 61. But Ford never sought to self-represent. To the contrary, as counsel admitted, Ford told counsel he would do whatever counsel advised him was "best for" Ford. *See* NT 11/16/15 at 131–32, 134; *see also* A80 (sister Jenna Wright's letter to court stating that Ford pled guilty because he "trusted in his attorney"). Ford was entitled to rely on the advice of counsel regardless of whether he was independently provided with his discovery. Yet Desiderio abused Ford's trust, at least in relation to his plea advice. Indeed, not only did Desiderio fail to accurately convey the strength of the prosecution's case, he appears to have spent more time talking to ADA Whitehead regarding Ford's cooperation than to Ford himself, and even shared with Whitehead privileged details about the content of counsel's conversation with Ford prior to taking the stand at his co-defendants' trial. *See* Am. Pet. ¶¶ 49, 52, 55–56.

The second fundamental flaw in the Commonwealth's argument that *Martinez* cannot excuse Ford's default is that it fails to account for the cumulative impact of counsel's errors, as required by *Strickland* and its progeny. *See, e.g.*, *Strickland v. Washington*, 466 U.S. 668, 693

(1984) ("Even if a defendant shows that particular *errors* of counsel were unreasonable . . . the defendant must show that they actually had an adverse effect on the defense.") (emphasis added); *id.* at 694 (petitioner must show "a reasonable probability that, but for counsel's unprofessional *errors*, the result of the proceeding would have been different") (emphasis added); *Williams (Terry) v. Taylor*, 529 U.S. 362, 397–98 (2000) (prejudice analysis requires evaluation of the totality of the available evidence).[7] Applying a cumulative analysis here, there can be no doubt that Ford's IAC claim satisfies the low bar required to excuse any default under *Martinez*.

**b. Ford satisfies the *Schlup* gateway.**

The Commonwealth also disputes that Ford is able to overcome any procedural default of his IAC claim under *Schlup*, contending that Ford's "police statement and the statement of witnesses who saw him with a gun and saw him shout 'get him' right before the victim was shot would easily have satisfied at least one reasonable juror that he was guilty beyond a reasonable doubt." Response at 66. But the argument is not persuasive. To begin, the Commonwealth errs to the extent it imposes a burden higher than that articulated in *Schlup*. *See, e.g.*, *House v. Bell*, 547 U.S. 518, 538 (2006) (affirming the standard under *Schlup* requires petitioner to establish it is

[7] *See also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) ("In order for counsel's inadequate performance to constitute a Sixth Amendment violation, petitioner must show that counsel's *failures* prejudiced his defense.") (emphasis added); *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (considering whether counsel's failure to uncover multiple categories of mitigating evidence prejudiced petitioner); *see also Jackson v. Carroll*, 161 F. App'x 190, 194 (3d Cir. 2005) (considering prejudice from two separate instances of counsel's deficient performance, and citing favorably to pre-AEDPA case of *Frey v. Fulcomer*, 974 F.2d 348, 361 n.12 (3d Cir. 1992), in which Third Circuit observed that "the prejudice question under *Strickland* is whether all of counsel's unprofessional errors combined undermine our confidence in the result"); *Berryman v. Morton*, 100 F.3d 1089, 1101–02 (3d Cir. 1996) (analyzing the cumulative prejudice of all of counsel's errors, including his failure to use inconsistent identification testimony, failure to investigate defense witnesses and opening the door to the admission of harmful testimony).

"more likely than not . . . no reasonable juror would find him guilty beyond a reasonable doubt," which is "by no means equivalent to the [sufficiency] standard of *Jackson* v. *Virginia,* 443 U.S. 307 (1979)"). The Commonwealth's argument is also premised on a fundamental misreading of the record. As detailed in the Amended Petition, Ford's police statement is in no way inculpatory and no eyewitness reliably claimed that Ford said "get him" before the victim was shot. *See* Am. Pet. ¶¶ 1, 88; *see also id.* ¶¶ 91–95 (describing various troubling aspects of eyewitness James Perry's account of the crime and noting that, while he eventually claimed to have heard Ford say "get him," that was not until after the victim had already been shot).

**B. Ford is entitled to relief on de novo review.**

Whether because the state-court opinion was unreasonable under § 2254(d) or because this claim is excusably defaulted, the state court's denial of post-conviction relief warrants no deference and this Court should review the claim under the appropriate standard in light of all of the evidence presented in Ford's Amended Petition. As discussed above, the Commonwealth's response newly asserts that Ford might be barred from developing new evidence in support of his IAC claim, Response at 54–55,[8] but its feeble attempt to sustain this argument fails, *see supra* Section II.B.1; *see also* Am. Pet. ¶¶ 108–12.

[8] Elsewhere, the Commonwealth argues that Ford cannot develop new evidence "unless he establishes one of § 2254(e)(2)'s extremely narrow exceptions, which he does not." Response at 67. But this assertion ignores that (e)(2)'s exceptions are only relevant if the petitioner "failed to develop" the evidence in state court within the meaning of the provision's opening clause. *See, e.g.*, *Williams (Michael)*, 529 U.S. at 430 (explaining limitations set forth in sub-provisions (2)(A) and (B) apply "only to prisoners who have 'failed to develop the factual basis of a claim'" in state court); *see also Thompson v. Lumpkin*, 592 U.S. 1344, 1345 (2021) (Kagan, J., joined by Breyer & Sotomayor, JJ., concurring in denial of certiorari) (stressing "how much rides on" the "opening clause" of § 2254(e)(2), given that the "restriction of evidentiary hearings never kicks in . . . unless 'the applicant has failed to develop the factual basis of [his] claim in State court proceedings'"). Because Ford did not "fail[] to develop" the evidence in state court, *see* Am. Pet. ¶¶ 108–12 &

No doubt recognizing the weakness of its position on § 2254(e)(2), the Commonwealth posits that this Court can simply avoid the question of whether Ford's substantial new evidence may be considered on de novo review. Specifically, the Commonwealth contends that "even considering all the evidence Ford presents, his claim fails de novo review, as the state courts' factual findings"—namely, the finding on direct appeal that "Ford understood the terms of his plea and agreement"—"foreclose a showing of prejudice." Response at 55. This argument also fails.

To begin, the Commonwealth's argument that the state court's factual findings on direct appeal bind this Court in reviewing a different claim de novo suffers from the same fundamental mistake made in the state-court opinion denying PCRA relief: a claim that counsel performed ineffectively in relation to a plea cannot be resolved on the basis of the trial record alone. The reason is starkly illustrated by comparing the evidence on which the direct-appeal decision rested and the evidence demonstrating counsel's ineffectiveness that supports Ford's claims in these federal proceedings. *See supra* Section I.B.2. The former record is the product of counsel's ineffectiveness, and the latter record establishes that ineffectiveness, as demonstrated extensively in the Amended Petition and summarized above.

Furthermore, while repeatedly insisting that the § 2254(e)(1) presumption of correctness applies on de novo review, the Commonwealth ignores binding Third Circuit precedent holding that the (e)(1) presumption does *not* preclude Ford from newly developing "clear and convincing evidence" to rebut any applicable state-court factual findings, assuming such development is not

---

*supra* Section II.B.1, the statutory exceptions are irrelevant.

barred by § 2254(e)(2). *Lambert v. Blackwell*, 387 F.3d 210, 236 (3d Cir.2004); *see also Cash v. Overmeyer,* No. CV 17-47, 2020 WL 475747, at *11 n.2 (W.D. Pa. Jan. 29, 2020) (clarifying that "there is no diligence exception to either Pinholster or its equivalent in Section 2254(d)(2)," meaning the rule in *Lambert* applies only on de novo review). As already established, § 2254(e)(2) poses no barrier to evidentiary development here, and therefore Ford may rely on that evidence to rebut the correctness of the state court's factual findings, as he does at length in the Amended Petition.

## CONCLUSION

For the reasons stated in the Amended Petition and herein, this Court should grant relief. If the Court believes summary relief is not appropriate at this juncture, the Court should grant an evidentiary hearing and/or oral argument.

Respectfully submitted,

*/s/ Katherine Thompson*

CLAUDIA FLORES
Supervising Attorney
KATHERINE THOMPSON
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut St., Suite 545W
Philadelphia, PA 19106
(215) 928-1100

Counsel for Petitioner Bernard Ford

Date: September 22, 2026

**CERTIFICATE OF SERVICE**

I, Katherine Thompson, hereby certify that on this 22nd day of September, 2026, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to Zachary A. Green, Esq., Assistant District Attorney, Federal Litigation Unit, Philadelphia District Attorney's Office.

*/s/ Katherine Thompson*
KATHERINE THOMPSON